## Wyatt, et al. v. Russell-Miller Milling Company.

(Decided February 27, 1923.)

### Appeal from Graves Circuit Court.

Sales—Buyer's Telegram to Ship at Reduced Price or Cancel Held Breach of Contract.—Where a buyer, whose contract fixed the price to be paid for the goods sold and required him to give shipping directions, wired the seller he expected the current price, which was less than the contract price, and authorized the seller to ship at once or cancel the order, with a request to wire an an-

swer, the telegram was not merely a proposition for modification of the existing contract, but was clearly intended as a refusal to accept the shipment unless made at the current price, so that the seller was justified in treating it as a breach and was entitled to the damages prescribed in the contract for such breach.

W. J. WEBB for appellants.

STANFIELD & STANFIELD for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Affirming.

On May 31, 1920, the appellee, Russell-Miller Milling Company, at Minneapolis, Minn., entered into a written contract with the Mayfield Bread Company, of Mayfield, Kentucky, whereby the former sold and the latter bought 620 packages of Occident flour of 98 pounds each, prepared in cotton, at $16.01 per barrel, to be delivered in sixty days. On the back of the contract are many conditions, one of them reading:

"7. The buyer shall furnish shipping instructions to the seller not less than fifteen days prior to the time of shipment. If the buyer shall fail to file with the seller within fifteen days prior to the expiration of the contract time of shipment, shipping instructions permitting the seller to ship within the remaining period of the contract time of shipment, then the seller may cancel this contract and the buyer shall pay to the seller an entry charge of 25 cents per barrel on flour and 50 cents per ton on feed plus or minus the then market price difference in the commodities covered by this contract, provided that if such shipping instructions are received during the last fifteen days of contract time of shipment prior to any notice of cancellation sent by the seller, the seller's right to cancel shall cease. If the buyer shall refuse to accept any shipment as specified hereunder or fail to perform any of the terms of this agreement, then the seller may cancel this contract, and the buyer shall pay to the seller the entry charge above provided plus or minus the then market price difference. The seller may also pursue such further remedies as the law may provide."

For some reason the terms of the contract were extended by mutual arrangement. While the contract was yet in force and on August 4, 1920, the Mayfield Bread Company sent a telegram to the Russell-Miller Milling Company at Minneapolis, Minn., reading:

"Will expect today's price on contract May 31st. You may ship at once or cancel order. Wire answer."

The contract of May 31, 1920, was the one to which we have referred, whereby the bread company purchased of the milling company the 620 packages of flour at the price of $16.01 per barrel, to be delivered in sixty (60) days. There was no contract by which the bread company had an option or privilege of buying flour at any time at the market price or a price different from that fixed in the contract. After the making of the contract on May 31, 1920, wheat had gone down considerably and flour naturally followed it. Upon receiving the above telegram the milling company, at Minneapolis, replied by wire as follows:

"We cannot comply with your directions and ship contract of May 31st at present price unless you pay the loss difference in market. Therefore we will not ship but have cancelled order as you request and according to terms of contract have charged your account with $961.00 to cover loss difference in market and entry fee. Please mail draft immediately for above amount."

The draft was not sent, but two days later, on August 6, 1920, the bread company at Mayfield sent the milling company a telegram which reads:

"Will expect shipment flour as per contract of May 31st."

To this telegram the milling company responded:

"We cancelled car as per your wire to do so, and expect you to pay the loss as we wired. Will book another car at our present price of $14.75 Mayfield for Occident halves cotton shipment next week. We have no other proposition to make."

It is the contention of the milling company that the bread company breached the contract by cancelling the order by the telegram first above quoted. It insists that in as much as the bread company breached the contract it had the right on that day, according to the terms of the written contract, to enter up an entry charge of 25 cents per barrel, plus the difference in price of $2.85 on the barrel, or a total of $961.00.

The appellant bread company insists that the telegram of August 4th, reading: "Will expect today's price on contract May 31st. You may ship at once or cancel order. Wire answer," was not a cancellation or breach of the contract of May 31st, but was a mere proposition made by the bread company to the milling company to

take 620 packages of the same flour at the price prevailing on August 4th, which was more than two dollars less per barrel than the price at which the bread company had purchased the flour. The bread company further says that the sentence: "You may ship at once or cancel order," was intended to mean that the milling company might ship the new order at once or not at all, and that the next sentence, "Wire answer," was an inquiry whether or not the milling company would accept this proposition and sell the flour at the prevailing price on August 4th, or would elect to cancel the order given by the bread company on May 31st, and in no sense was it intended to be a cancellation of the contract, but on the contrary was intended to start negotiations between the two firms looking to an adjustment of the contract of May 31st. We cannot agree with the construction put upon the language of the telegram by the bread company. Undoubtedly the bread company intended for the milling company to reduce the price of the flour contracted on May 31st to the price prevailing on August 4th, and if it declined to do so and would not accept such a price for the flour to cancel the order, and to wire the bread company which it had done, that is, whether it would ship the flour at the lower price or cancel the order. The bread company had no contract to buy Occident flour from the milling company at less than $16.01 per barrel. When it peremptorily demanded that the price be reduced or the order cancelled, the milling company had the right to act upon the telegram and cancel the order, for the telegram so read was clearly a breach of the written contract. It, in substance, told the milling company that if it did not reduce the price of the flour to that prevailing on the day the telegram was sent the order should be cancelled and the bread company would not receive the flour.

Both appellant and appellee concede that if the telegram above quoted be construed as a cancellation of the order, then the damages of $961.00, as of August 4th, followed under and by the terms of the contract. We think the trial court properly instructed the jury to find and return a verdict for the milling company. The judgment being in accordance therewith is affirmed.

Judgment affirmed.